ADANTÉ POINTER, ESQ., SBN 236229
PATRICK BUELNA, ESQ., SBN 317043
**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**
155 Filbert St., Suite 208,
Oakland, CA 94607
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

JASON J.M. ROSS, ESQ., (SBN 282921)
**KNOX & ROSS LAW GROUP**
3661 Grand Ave., Suite 205
Oakland CA 94610
Tel: 510-240-5278
Email: jjmross@KnoxRossLaw.com

Attorneys for Plaintiff, A.S.

MICHAEL SLATER , ESQ. SBN 318899
**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**
633 West 5th St., Suite 2627
Los Angeles, CA 90071
Tel: 510-929-5400
Email: MSlater@LawyersFTP.com

Attorneys for Plaintiff, A.S.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.S., a minor, by and through his Guardian Ad Litem, Kelani Lynch;<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, a California public entity; STARSUN FINCEL, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 5:25-cv-00085<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1)** Excessive Force in violation of the Fourth Amendment (42 U.S.C., § 1983)<br>**(2)** Battery (Cal. Gov. Code, § 820)<br>**(3)** Negligence (Cal. Gov. Code, § 820)<br>**(4)** Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code, § 52.1)<br>**(5)** Municipal Liability (42 U.S.C., § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

1

# COMPLAINT FOR DAMAGES

Plaintiff A.S., a minor, by and through his Guardian Ad Litem, Kelani Lynch; for his Complaint for Damages against Defendants County of San Bernardino, Starsun Fincel and DOES 1 through 20, inclusive (hereafter collectively, "Defendants"); hereby alleges as follows:

## THE PARTIES

1. Plaintiff A.S. ("Plaintiff") is a citizen of the United States who, at the times of the violations of law alleged herein, resided and, at the present time, continues to reside with his mother, Kelani Lynch, within the jurisdictional boundaries of the County of San Bernardino. At all times relevant herein, and as of the time this Complaint was filed, Plaintiff was, and continues to be, a minor having been born in 2007.

2. Kelani Lynch ("Ms. Lynch") is a competent adult and citizen of the United States who, at the time of the violations of law alleged herein resided and at the present time, continues to reside with Plaintiff in the County of San Bernardino. Ms. Lynch is Plaintiff's biological mother and brings this action as Plaintiff's Guardian Ad Litem.

3. Defendant County of San Bernardino (the "County") is a municipal public entity located within this judicial district and duly authorized and existing as such in and under the laws of the State of California. The County manages and operates the San Bernardino Sheriff's Department (the "SBSD") and the SBSD Deputies and DOE Defendants identified herein. At the times of the violations of law alleged herein, the County was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the County, the SBSD and its employees/agents complied with the laws of the United States and the State of California – including with respect to the SBSD Deputies and DOE Defendants identified herein.

4. Defendant Starsun Fincel ("Defendant Fincel") is an individual who, at the times of the violations of law alleged herein, was employed as a Sheriff's Deputy by the San Bernardino Sheriff's Department. At the times of the violations of law alleged

herein, Defendant Fincel was acting under color of state law and within the course and scope of his employment with the SBSD. Defendant Fincel is being sued in his individual capacity and in his capacity as an SBSD law enforcement officer. On information and belief, Defendant Fincel is a resident of the County of San Bernardino in the State of California.

5. Plaintiff is ignorant of the true names and/or capacities of Defendants sued herein as DOES 1 through 20 (the "DOE Defendants") and, therefore, sue the DOE Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE Defendants when ascertained. Plaintiff believes and alleges that each of the DOE Defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each of the DOE Defendants proximately caused Plaintiff's injuries and damages because of their conduct, negligence, breach of duty, management and/or violation of public policy. Each DOE Defendant is liable for their personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, or control or upon any other act or omission. On information and belief, DOE Defendants are residents of the County of San Bernardino in the State of California.

6. DOES 1 through 10 are not managerial, supervisorial or policymaking employees of the County/SBSD. At the times of the violations of law alleged herein, DOES 1 through 10 were acting under color of law within the course and scope of their employment with the County/SBSD. At all relevant times, DOES 1 through 10 were acting with the authority and ratification of their principal, the County/SBSD.

7. DOES 11 through 20 are managerial, supervisorial and/or policymaking employees of the County/SBSD. DOES 11 through 20 ratified the conduct of their inferior law enforcement officers. At the times of the violations of law alleged herein, DOES 11 through 20 were acting under color of law within the course and scope of

**COMPLAINT FOR DAMAGES**

their employment with the County/SBSD. At all relevant times, DOES 11 through 20 were acting with the authority of their principal, the County/SBSD, which ratified the conduct of Defendants.

8. All Defendants who are natural persons, including DOE Defendants, are sued individually and in their capacities as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives of the County/SBSD.

9. In doing the acts alleged herein, Defendants, including DOE Defendants, and each of them, acted within the course and scope of their employment with the County/SBSD.

10. In doing the acts and/or omissions alleged herein, Defendants, including DOE Defendants, and each of them, acted under color of authority and/or under color of law.

11. Due to the acts and/or omissions alleged herein, Defendants, including the DOE Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

## JURISDICTION & VENUE

12. This Court has original jurisdiction over Plaintiff's federal law claims under 28 U.S.C. sections 1331 [federal question jurisdiction] and 1343(a)(3) [federal civil rights jurisdiction]. All claims for violations of the United States Constitution are brought pursuant to 42 U.S.C. section 1983. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. section 1367.

13. Venue is proper in this judicial district under 28 U.S.C. section 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

14. Pursuant to the California Tort Claims Act, Plaintiff presented a tort claim to the County within six months of the violations of law alleged herein, which the County rejected. As such, Plaintiff has exhausted his administrative remedies.

## FACTUAL ALLEGATIONS

15. This lawsuit arises from the excessive force Defendant SBSD Deputy Starsun Fincel used against Plaintiff A.S. during a September 22, 2023 high school football game at Victor Valley High School in Victorville, California.

16. Defendant Fincel and other law enforcement officers were present during a September 22, 2023 football game at the Victor Valley High School in Victorville, California, when a physical altercation broke out between a number of attendees, the vast majority of whom were minors.

17. Defendant Fincel and other law enforcement officers responded to the physical altercation. When Defendant Fincel arrived at the scene, he observed several individuals, including a young woman named F.J. (a minor, and Plaintiff's friend), near another law enforcement officer. Defendant Fincel thereafter picked F.J. up off the ground and above his shoulders before throwing F.J. down onto the pavement like a ragdoll.

18. Plaintiff was a few feet away from Defendant Fincel, and standing still, when Defendant Fincel threw F.J. to the floor. At that moment, Plaintiff was neither attacking/confronting or attempting to attack/confront Defendant Fincel or any other law enforcement officer or person at the scene.

19. Nonetheless, when Defendant Fincel had finished throwing F.J. to the pavement, Defendant Fincel turned his sights towards Plaintiff, who was still standing still with his arms down.

20. Although Plaintiff did not pose a threat to Defendant Fincel or any other law enforcement officer or person at the scene, Defendant Fincel closed the distance between him and Plaintiff and immediately punched Plaintiff in his stomach and pushed

Plaintiff backwards. As Defendant Fincel is a much larger man that Plaintiff, Plaintiff was immediately knocked off balance and fell backwards (though Plaintiff remained standing).

21.  In response, and fearing for his safety, Plaintiff pushed back against Defendant Fincel, in response to which Defendant Fincel punched Plaintiff several more times, including to Plaintiff's body and face, with tremendous force. Continuing to fear for his safety, and in self-defense, Plaintiff reflectively continued pushing back against Defendant Fincel to try to stop Defendant Fincel's violent assault against him.

22.  Immediately thereafter, Defendant Fincel body slammed[1] Plaintiff to the ground – landing on Plaintiff with the full weight of his body. As a result, Plaintiff's face hit the pavement, resulting in abrasions and bruising to Plaintiff's face.

23.  Even though Plaintiff was secured underneath Defendant Fincel and, therefore, incapacitated, Defendant Fincel pressed his knee into the back of Plaintiff's neck and punched Plaintiff approximately six (6) times on the side and back of his head before placing Plaintiff in handcuffs and escorting him to his patrol vehicle for transport and detention.

(The foregoing-described uses of force Defendant Fincel employed against Plaintiff will be referred to collectively herein as the "Subject Uses of Force.")

24.   The Subject Uses of Force employed by Defendant Fincel against Plaintiff were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Plaintiff's safety, health and wellbeing.

---

[1] "The *American Heritage Dictionary* defines 'body slam' as '[a] wrestling move in which one wrestler picks up and throws the other to the floor.'" United States v. Vasquez, 843 F. Supp. 2d 1147, 1150 (D. Or. 2012) (quoting *The Am. Heritage Dictionary* 205 (5th ed. 2011).

25. As a direct and proximate result of the Subject Uses of Force, Plaintiff suffered physical injuries, including, but not limited to: abrasions and bruising to Plaintiff's body and face, a suspected concussion and headaches.

26. As a direct and proximate result of the Subject Uses of Force, Plaintiff also suffered emotional distress, depression, anxiety, humiliation and hypersensivity/fear around law enforcement.

## FIRST CLAIM FOR RELIEF

**Excessive Force in Violation of the Fourth Amendment (42 U.S.C., § 1983)**

**(Against Defendants Starsun Fincel and DOES 1 and 20)**

27. Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

28. Allegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures. Graham v. Connor, 490 U.S. 386, 388 (1989). When evaluating a Fourth Amendment claim of excessive force, a court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" Kaur v. City of Lodi, 263 F. Supp. 3d 947, 962 (E.D. Cal. 2017) (citing Graham, 490 U.S. at 397). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)); Scott v. Harris, 550 U.S. 372, 383 (2007).

29. The Ninth Circuit has articulated a three-step approach to the Graham balancing test. See Glenn v. Washington Cty., 673 F.3d 864, 871 (9th Cir. 2011). First, the district court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." Id. (internal quotation marks omitted). Second, the district court must "evaluate the government's interest in the use of force." Id. Finally, the district court must "balance the gravity of

the intrusion on the individual against the government's need for that intrusion." Id. (internal quotation marks omitted).

30. The Subject Uses of Force Defendant Fincel employed against Plaintiff were not objectively reasonable in light of the facts and circumstances confronting Defendant Fincel at the time they were employed.

31. As explained in more detail above, Defendant Fincel responded to a physical altercation that had broken out between attendees of a high school football game at Victor Valley High School, when he body-slammed Plaintiff's female friend, F.J., and thereafter punched, pushed, punched (again), body slammed and punched (again) Plaintiff, resulting in significant physical and emotional injuries. As such, the nature and quality of the Subject Uses of Force were intermediate to significant under Ninth Circuit precedent.

32. The government's interest in the Subject Uses of Force was, at best, minimal.

33. Under Graham, the Court evaluates the government's interest in the use of force by examining three core factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. Courts also take into account (4) the extent of the injury inflicted when analyzing the force employed. Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994).

34. With respect to the first Graham factor, when Defendant Fincel first punched and pushed Plaintiff, Plaintiff was not suspected of committing any crime whatsoever. Accordingly, this factor weighs heavily against the constitutionality of the Subject Uses of Force Employed.

35. While it is true that, after Plaintiff was pushed and punched by Defendant Fincel, Plaintiff responded by pushing back against Defendant Fincel and making

contact with Defendant Fincel's body, Plaintiff reasonably understood his response to be an act of self-defense.

36. "[A]n individual may make out an affirmative defense of self-defense against a federal law enforcement official who uses excessive force in a narrow range of circumstances. *See* United States v. Span, 970 F.2d 573, 577 (9th Cir. 1992); *see also* id. at 580 [noting that an individual has a limited right to offer reasonable resistance to arrest that is triggered by the officer's bad faith or provocative conduct]. To do so, Plaintiff must and can offer evidence to show: "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." United States v. Urena, 659 F.3d 903, 907 (9th Cir. 2011) (quoting United States v. Biggs, 441 F.3d 1069, 1071 (9th Cir. 2006)).

37. What is more, even if Plaintiff was, at some point during the altercation with Defendant Fincel, resisting Defendant Fincel's efforts to arrest him (which Plaintiff denies, since he was acting in self-defense), obstructing a police officer's arrest efforts is generally not considered a serious crime for purposes of a Fourth Amendment excessive force analysis. *See* Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012) [cases dating back to 2001 have established that "[a] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"]; Davis, 478 F.3d at 1055 (9th Cir. 2007) [noting that obstructing a police officer is generally not a severe crime for purposes of a Fourth Amendment excessive force analysis]; Huber v. Coulter, 2015 WL 13173223, at *1 (C.D. Cal. 2015), aff'd, 684 F. App'x 623 (9th Cir. 2017) ["[O]bstructing a police officer is generally not considered a severe crime for purposes of a Fourth Amendment excessive force analysis."]. As such, the nature of the suspected crimes at issue provided little, if any, basis for Defendant Fincel to employ the Subject Uses of Force against Plaintiff.

38. With respect to the second Graham factor, Plaintiff did not pose an immediate threat to Defendant Fincel, or any other law enforcement officer or person when Defendant Fincel punched, pushed, punched (again), body slammed and punched (again) Plaintiff. While it is true that, after Defendant Fincel punched and pushed Plaintiff (for the first time), Plaintiff responded by pushing back against Defendant Fincel, Plaintiff's response was legally justified self-defense because Plaintiff sincerely believed it was necessary to defend himself against Defendant Fincel's unlawful force.

39. With respect to the third Graham factor, Plaintiff was neither actively resisting arrest nor attempting to flee when Defendant Fincel punched and pushed Plaintiff (for the first time). While it is true that, after Defendant Fincel punched and pushed Plaintiff (for the first time), Plaintiff responded by pushing back against Defendant Fincel, Plaintiff's response was legally justified self-defense because Plaintiff sincerely believed it was necessary to defend himself against Defendant Fincel's unlawful force.

40. With respect to the fourth Graham factor, Plaintiff's injuries were significant. As a direct and proximate result of the Subject Uses of Force, Plaintiff suffered physical injuries, including, but not limited to: abrasions and bruising to Plaintiff's body and face, a suspected concussion and headaches. Additionally, as a direct and proximate result of the Subject Uses of Force, Plaintiff also suffered emotional distress, depression, anxiety, humiliation and hypersensivity/fear around law enforcement.

41. Balancing the nature and quality of the intrusion on Plaintiff's Fourth Amendment rights against the countervailing governmental interests at stake, the Subject Uses of Force were excessive in violation of the Fourth Amendment.

42. The Subject Uses of Force employed by Defendant Fincel were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or

malice; and/or were despicable and perpetrated with a willful and conscious disregard for Plaintiff's safety, health and wellbeing.

## SECOND CLAIM FOR RELIEF

### Battery (Cal. Gov. Code, § 820)

**(Against Defendants Starsun Fincel and DOES 1 and 20; Vicariously Against the County)**

43. Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

44. As explained in more detail above, Defendant Fincel responded to a physical altercation that had broken out between attendees of a high school football game at Victor Valley High School, when he body-slammed Plaintiff's female friend, F.J., and thereafter punched, pushed, punched (again), body slammed and punched (again) Plaintiff, resulting in significant physical and emotional injuries.

45. The Subject Uses of Force Defendant Fincel employed against Plaintiff were intended by Defendant Fincel to harm or offend Plaintiff.

46. A reasonable person in Plaintiff's position would have been offended by the Subject Uses of Force Defendant Fincel employed against him.

47. Plaintiff did not consent to the Subject Uses of Force employed against him.

48. The Subject Uses of Force Defendant Fincel employed against Plaintiff were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Plaintiff's safety, health and wellbeing.

49. As a direct and proximate result of the Subject Uses of Force employed against Plaintiff, Plaintiff was physically and emotionally damaged.

50. The Subject Uses of Force as described herein were done within the scope of Defendant Fincel's employment with the County. The County is vicariously liable

for the state law torts committed by Defendant Fincel, including his battery against Plaintiff, pursuant to California Government Code section 815.2(a).

## THIRD CLAIM FOR RELIEF

### Negligence (Cal. Gov. Code, § 820)

**(Against Defendants Starsun Fincel and DOES 1 and 20; Vicariously Against the County)**

51. Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

52. Defendant Fincel had a duty to exercise reasonable care when engaging with Plaintiff, even if he suspected Plaintiff of having committed certain crimes.

53. Defendant Fincel violated his duty to exercise reasonable care when he employed the Subject Uses of Force against Plaintiff, because the Subject Uses of Force were unreasonable and excessive under the circumstances. Specifically, Defendant Fincel responded to a physical altercation that had broken out between attendees of a high school football game at Victor Valley High School, when he body-slammed Plaintiff's female friend, F.J., and thereafter punched, pushed, punched (again), body slammed and punched (again) Plaintiff, resulting in significant physical and emotional injuries.

54. As a direct and proximate result of the Subject Uses of Force Defendant Fincel employed against Plaintiff, Plaintiff was physically and emotionally damaged.

55. The Subject Uses of Force as described herein were done within the scope of Defendant Fincel's employment with the County. The County is vicariously liable for the state law torts committed by Defendant Fincel, including his negligence as described herein, pursuant to California Government Code section 815.2(a).

/ / /

/ / /

/ / /

/ / /

# FOURTH CLAIM FOR RELIEF

## Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code, § 52.1)

## (Against Defendants Starsun Fincel and DOES 1 and 20; Vicariously Against the County)

56. Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

57. Defendant Fincel used excessive force against Plaintiff in violation of the Fourth Amendment. Specifically, Defendant Fincel responded to a physical altercation that had broken out between attendees of a high school football game at Victor Valley High School, when he body-slammed Plaintiff's female friend, F.J., and thereafter punched, pushed, punched (again), body slammed and punched (again) Plaintiff, resulting in significant physical and emotional injuries.

58. Defendant Fincel's Fourth Amendment violations against Plaintiff demonstrated his specific intent to violate Plaintiff's Fourth Amendment rights.

59. Defendant Fincel's Fourth Amendment violations were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Plaintiff's safety, health and well-being.

60. As a direct and proximate result of the Subject Uses of Force employed against Plaintiff, Plaintiff was physically and emotionally damaged.

61. The Subject Uses of Force as described herein were done within the scope of Defendant Fincel's employment with the County. The County is vicariously liable for the state law torts committed by Defendant Fincel, including his violation of the Tom Bane Civil Rights Act with respect to Plaintiff, pursuant to California Government Code section 815.2(a).

///

///

///

# FIFTH CLAIM FOR RELIEF

## Municipal Liability (42 U.S.C., § 1983)

### (Against Defendant County Only)

62. Plaintiff incorporates all the foregoing allegations of this Complaint as though fully set forth herein.

63. The County's customs, policies and/or practices were the moving force behind the Fourth Amendment violations alleged herein.

64. The County, together with County policymakers and supervisors, maintained, among others, the following customs, policies and practices:

(a) The County routinely fails to train its officers in the constitutional use of force on unarmed individuals, including the use of punches and takedown maneuvers (including body slams);

(b) The County routinely fails to discipline officers who use excessive force; and

(c) The County routinely maintains inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement officers of the County.

65. As a direct and proximate result of the County's customs, policies and/or practices, Plaintiff was physically and emotionally damaged.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## JURY TRIAL DEMAND

**WHEREFORE**, Plaintiff A.S., a minor, by and through his Guardian Ad Litem, Kelani Lynch, hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff A.S., a minor, by and through his Guardian Ad Litem, Kelani Lynch, prays for judgment against Defendants County of San Bernardino, Starsun Fincel and DOES 1 through 20, inclusive, as to each claim for relief as follows:

**AS TO THE FIRST CLAIM FOR RELIEF** (Excessive Force in Violation of the Fourth Amendment):
1. For general and special damages according to proof at trial;
2. For punitive and exemplary damages;
3. For reasonable attorneys' fees pursuant to 42 U.S.C. section 1988(b);
4. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
5. For such other relief as the Court deems just and proper.

**AS TO THE SECOND CLAIM FOR RELIEF** (Battery)
1. For general and special damages according to proof at trial;
2. For punitive and exemplary damages; and
3. For such other relief as the Court deems just and proper.

**AS TO THE THIRD CLAIM FOR RELIEF** (Negligence):
1. For general and special damages according to proof at trial;
2. For punitive and exemplary damages; and
3. For such other relief as the Court deems just and proper.

**AS TO THE FOURTH CLAIM FOR RELIEF** (Violation of the Tom Bane Civil Rights Act):
1. For general and special damages according to proof at trial;
2. For statutory damages;
3. For punitive and exemplary damages;
4. For reasonable attorneys' fees pursuant to California Civil Code section 52.1;
5. For such other relief as the Court deems just and proper.

**AS TO THE FIFTH CLAIM FOR RELIEF** (Municipal Liability):
1. For general and special damages according to proof at trial;
2. For reasonable attorneys' fees pursuant to 42 U.S.C. section 1988(b);
3. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
4. For such other relief as the Court deems just and proper.

Dated: January 13, 2025          **POINTER & BUELNA, LLP**
                                 **LAWYERS FOR THE PEOPLE**

                                 By: */s/ Adante Pointer*
                                     ADANTE POINTER
                                     PATRICK BUELNA
                                     Counsel for Plaintiff, A.S., a minor

Dated: January 13, 2025          **THE SLATER LAW FIRM, APC**

                                 By: */s/ Michael A. Slater*
                                     MICHAEL A. SLATER
                                     Counsel for Plaintiff, A.S., a minor